PER CURIAM
The instant disciplinary proceeding arises from a motion and rule to revoke *1028 probation filed by the Office of Disciplinary Counsel ("ODC") against respondent, Arthur L. Harris, Sr., for his violation of additional Rules of Professional Conduct while on court-ordered probation imposed in In re: Harris , 13-2368 (La. 12/6/13), 129 So.3d 526 (" Harris I "), as well as for his failure to comply with the conditions of probation imposed in that matter.
UNDERLYING FACTS AND PROCEDURAL HISTORY
The record in Harris I demonstrated that respondent neglected two legal matters, failed to communicate with his clients, failed to promptly refund unearned fees, and failed to cooperate with the ODC in its investigation. Following the filing of formal charges, respondent and the ODC submitted a joint petition for consent discipline, proposing that respondent be suspended from the practice of law for one year and one day, fully deferred, subject to a two-year period of supervised probation with specified conditions. On December 6, 2013, this court accepted the petition for consent discipline in Harris I . The court's order stated in pertinent part as follows:
IT IS ORDERED that the Petition for Consent Discipline be accepted and that Arthur L. Harris, Sr., Louisiana Bar Roll number 6608, be suspended from the practice of law for a period of one year and one day. It is further ordered that this suspension shall be deferred in its entirety, subject to respondent's successful completion of a two-year period of supervised probation governed by the terms and conditions set forth in the Petition for Consent Discipline. The probationary period shall commence from the date respondent, the probation monitor, and the ODC execute a formal probation plan. Any failure of respondent to comply with the conditions of probation, or any misconduct during the probationary period, may be grounds for making the deferred suspension executory, or imposing additional discipline, as appropriate. [Emphasis added.]
On October 20, 2016, respondent executed a formal probation agreement with the ODC.[1] Among other conditions, respondent agreed to the following:
At the intervals set out in this plan and at any other time requested by the Probation Monitor, Respondent shall provide the Probation Monitor and the Office of Disciplinary Counsel with written reports of Respondent's activities which fall within the ambit of his probation. Any failure to furnish such written reports shall constitute a basis for revocation of probation.
DISCIPLINARY PROCEEDINGS
Motion and Rule to Revoke Probation
On April 18, 2018, the ODC filed the instant motion and rule to revoke respondent's probation, alleging that he had failed to comply with the conditions of his probation in Harris I . Essentially, the ODC alleged that respondent failed to provide his probation monitor, Harold M. Wheelahan, III, with written reports of his activities, as required by his probation plan.[2]
In addition, during respondent's probationary period, three disciplinary complaints were filed against him. One client complained that respondent had failed to refund an unearned fee. Two other complaints involved allegations that respondent had not returned client files. Respondent also failed to reply to the complaints;
*1029 failed to appear for a sworn statement, despite being served with a subpoena; and failed to update his registration addresses.
Accordingly, the ODC prayed for revocation of respondent's probation and the imposition of the previously deferred one year and one day suspension.
Respondent was served with the motion and rule to revoke probation but did not file an answer thereto. However, the day before the hearing in the matter, respondent's counsel filed a motion for continuance. The disciplinary board denied the motion.
Hearing on Revocation of Probation
This matter proceeded to a hearing before an adjudicative panel of the disciplinary board on May 14, 2018. Respondent did not appear at the hearing, despite being subpoenaed to appear; however, his counsel, Ernest Jones, appeared. Mr. Jones stated that although he was enrolled as respondent's counsel, he was not prepared to participate in the hearing and that he would simply observe. He further informed the board panel that respondent was "not here at my direction." Mr. Jones indicated that respondent was not able to appear due to some "physical" and "mental" reasons, but Mr. Jones said he was not prepared to present any evidence on those issues.
Following the presentation of the ODC's evidence, the board panel allowed Mr. Jones until 5:00 p.m. on Wednesday, May 16, 2018 to file a post-hearing memorandum. On May 16, 2018, Mr. Jones, on behalf of respondent, filed the following "Posthearing Statement":
Although complete medical records of Respondent were requested in early May, it is administratively impossible to obtain same in time to meet the 5 pm deadline imposed by the Board. Respondent is unable to present his argument in avoidance or mitigation at this time.
Disciplinary Board Recommendation
On May 23, 2018, the disciplinary board filed its report with this court, recommending that the ODC's motion to revoke probation be granted in light of the evidence in the record. The board also recommended that the deferred one year and one day suspension imposed in Harris I be made executory.
1. VIOLATION OF TERMS OF PROBATION
Under respondent's probation plan (the "plan"), he was required to respond to all reasonable requests of his probation monitor and to make himself reasonably available for conferences with the probation monitor. The plan also included a requirement that respondent submit written reports to his probation monitor and the ODC at the intervals set out in the plan and provided that any failure to furnish such written reports "shall constitute a basis for revocation of probation." The plan further required that the probation monitor ascertain whether respondent was in compliance with the probation conditions and provided that any reports or evidence of violation of the conditions of probation brought to the attention of the ODC "may result in a rule for summary revocation of probation and/or imposition of additional discipline."
The plan included a detailed schedule for review of respondent's cases by the probation monitor and for reporting by respondent and the probation monitor. The plan required that respondent provide a list of active client files to the probation monitor on November 1, 2016, and that quarterly thereafter for a two-year period, he provide an updated client file list and a written report of his professional activities to the probation monitor.
Mr. Wheelahan reported to the ODC that respondent "offered total cooperation" at their initial meeting on October 20, 2016, at which time the plan was executed.
*1030 However, this cooperation quickly waned. On January 20, 2017, Mr. Wheelahan wrote to respondent that he was having trouble making contact with him-his e-mails were returned as undeliverable, a letter from the prior month had not been responded to, and his voicemail box was full. Mr. Wheelahan requested an update on respondent's cases and requested that he call "upon receipt of this letter."
This correspondence apparently prompted respondent to update his client file list and send it to Mr. Wheelahan. Mr. Wheelahan, in turn, forwarded the list to the ODC on February 11, 2017. However, on August 31, 2017, Mr. Wheelahan wrote to the ODC to advise that he had had "little recent success in dealing with" respondent. According to Mr. Wheelahan, he had spoken with respondent in July, after several attempts to track him down, and that respondent had suggested he had been "unwell and out of the office." Respondent was unable to explain to Mr. Wheelahan why his mail had been returned as undeliverable/no longer at this address, but promised to send an updated client file list. Mr. Wheelahan did not hear from respondent thereafter, despite his efforts to reach him. He concluded that respondent "just has not been very cooperative in his probation."
The board noted that the record contains no evidence of any other communication relating to respondent's probation between Mr. Wheelahan and respondent or between Mr. Wheelahan and the ODC subsequent to the August 31, 2017 letter. Further, the record contains no evidence indicating respondent ever submitted any of the written reports of his professional activities required under the plan either before or after Mr. Wheelahan died in February 2018. Accordingly, the board found the ODC presented sufficient evidence to demonstrate that respondent failed to comply with the terms and conditions of his probation.
2. ADDITIONAL MISCONDUCT DURING PROBATION
A. The Purvis Matter
In March 2016, respondent was retained to represent Jon Phillip Purvis in a criminal case. Respondent was paid a total of $7,500 for the representation. In June 2016, Mr. Purvis terminated respondent's services and sent him a letter requesting a full refund of the fee he paid. When he did not hear from respondent, Mr. Purvis sent respondent three more letters, again requesting a refund. Respondent did not reply to this correspondence. Mr. Purvis testified at the hearing that he was aware of no action that respondent had taken in his defense, and specifically noted that respondent had failed to attend court in his criminal case on one occasion. Based on these findings, the board concluded that the ODC presented sufficient evidence demonstrating respondent failed to refund an unearned fee, in violation of Rules 1.5(f)(5) (failure to refund an unearned fee) and 1.16(d) (obligations upon termination of the representation) of the Rules of Professional Conduct.
B. The Barker Matter
The ODC received a complaint in January 2018 from New Orleans attorney Paul J. Barker in connection with respondent's representation of Wilford Vangure in a criminal matter. Mr. Barker is currently representing Mr. Vangure in connection with a post-conviction relief application. In his testimony at the hearing, Mr. Barker explained that respondent represented Mr. Vangure in the original criminal proceeding in which Mr. Vangure was convicted of murder. After the 2012 conviction, another attorney, Edward Marquet, represented Mr. Vangure in his post-conviction relief efforts. In April 2016, Mr. Marquet obtained a subpoena duces tecum compelling *1031 respondent to produce his file and records related to his representation of Mr. Vangure. Respondent filed a motion to quash the subpoena, which was denied, and he was ordered to produce the subpoenaed materials within five days from June 22, 2016, the date of the order denying the motion to quash. Mr. Marquet withdrew from the representation of Mr. Vangure shortly thereafter.
Mr. Barker was retained by Mr. Vangure in approximately June 2017. Upon being hired, Mr. Barker determined that respondent had never complied with the order to produce his file. Mr. Barker was not successful in his first attempts to contact respondent by phone, but he ultimately spoke with him on January 10, 2018. Respondent told Mr. Barker that he still had Mr. Vangure's file and that he would bring the file to Mr. Barker's office within two weeks. Mr. Barker requested respondent's e-mail address in order to confirm the conversation, but respondent said that his e-mail was "not working." Therefore, Mr. Barker confirmed the conversation and agreement to produce the file in a text message.
When respondent did not produce the file as promised, Mr. Barker searched the Louisiana State Bar Association ("LSBA") Membership Directory for respondent's e-mail address and sent respondent an e-mail with a "final demand for a copy of Mr. Vangure's file" on January 24, 2018. Respondent called Mr. Barker the next day and said that he was still getting the file together and needed more time. However, Mr. Barker felt that he could not wait any longer given the nature of the post-conviction proceeding. On January 26, 2018, he sent his complaint to the ODC, and on February 14, 2018, he filed a motion for contempt of court against respondent. The hearing on the motion for contempt has never occurred because the sheriff has not been able to obtain service on respondent at his primary registration address. The motion has been rescheduled for hearing and Mr. Vangure's family-who are of limited means-has had to pay $260 in costs to hire a special process server to serve respondent with the motion for contempt.[3]
The board observed that Mr. Barker gave moving testimony about his beliefs that Mr. Vangure was wrongfully convicted of murder in a quick trial which essentially lasted one day and that strong grounds, including ineffective assistance of counsel and a good Brady claim, exist for obtaining post-conviction relief for Mr. Vangure. He explained that the file in respondent's possession is evidence which is essential for making the case for relief in which Mr. Vangure bears the burden of proof. Furthermore, while the judge in the criminal matter has been very understanding of the predicament caused by respondent, Mr. Barker is concerned as to how long the judge will be willing to delay the matter.
Based on these findings, the board concluded that the ODC presented sufficient evidence demonstrating respondent violated the following provisions of the Rules of Professional Conduct: Rules 1.16(d) and 8.4(d) (engaging in conduct prejudicial to the administration of justice). The board pointed out that respondent's conduct prejudicial to the administration of justice is particularly egregious under the circumstances here, where he is withholding evidence which is crucial to his former client's application for relief from a murder conviction that occurred six years ago.
*1032 C. The Pollard Matter
The ODC received a complaint in January 2018 from Bernell Pollard, whom respondent had represented in his trial on a charge of second degree murder. On November 9, 2017, and again on December 13, 2017, Mr. Pollard sent respondent a written request for a copy of his file and received no response from respondent. Mr. Pollard testified at the hearing via telephone from the Louisiana State Penitentiary. He confirmed the information contained in his written complaint and stated that respondent has never responded to his written requests for his file.
Initially, Mr. Pollard's complaint was handled as an administrative matter, and an ODC investigator, Christopher Gwynn, was assigned to facilitate the return of Mr. Pollard's file to him. On January 18, 2018, Mr. Gwynn sent an e-mail to respondent at his registered address advising of Mr. Pollard's request for his file, and asking that respondent provide documentation when the file had been sent to Mr. Pollard. Respondent did not respond to the e-mail.
On January 22, 2018, Mr. Gwynn telephoned respondent at his primary registered telephone number. He spoke with respondent, who stated that he had not received the January 18th e-mail. Respondent confirmed the accuracy of the e-mail address and said that he would pick up the e-mail correspondence from the ODC. To expedite the process, Mr. Gwynn suggested that he would fax the e-mail to respondent, but respondent said that he would have to make arrangements to receive the fax.
Having heard nothing further, Mr. Gwynn called respondent again on January 24, 2018. Respondent said that it would not be an issue to return Mr. Pollard's file. He also indicated that he had no working fax or e-mail, but that Mr. Gwynn could fax the January 18th e-mail to a local Office Depot. However, respondent said that he did not have the fax number for Office Depot and would have to call Mr. Gwynn back with the number.
Respondent did not call Mr. Gwynn back, and therefore Mr. Gwynn began calling respondent. Mr. Gwynn spoke with respondent by phone again on January 29, 2018. On that date, Mr. Gwynn was able to fax the January 18th e-mail to respondent at a Fed Ex number. Respondent confirmed receipt of the fax.
Mr. Gwynn called respondent on February 8, 2018 to follow up regarding the return of the file to Mr. Pollard. Respondent told Mr. Gwynn that he had the file in his possession and would ship the file to Mr. Pollard by February 13, 2018. Mr. Gwynn reminded respondent to send the ODC a receipt of shipment to prove he had returned the file to his client. Mr. Gwynn never received a copy of Mr. Pollard's file or confirmation from respondent that the file had been sent to Mr. Pollard. Mr. Gwynn closed his administrative file and the matter was referred to the ODC's screening counsel. Mr. Gwynn testified at the hearing that had respondent simply returned the file to Mr. Pollard, the ODC would have closed the complaint.
Based on these findings, the board concluded that the ODC presented sufficient evidence demonstrating respondent violated Rule 1.16(d) of the Rules of Professional Conduct.
3. FAILURE TO COOPERATE WITH THE ODC/FAILURE TO COMPLY WITH ADMINISTRATIVE REQUIREMENTS
On October 24, 2016, the ODC sent a letter to respondent enclosing a copy of the Purvis complaint and advising respondent that he was required to provide a response within fifteen days of receipt. The letter was sent by certified mail to respondent's primary registration address (One Lakeway Center, 3900 North Causeway Boulevard, Suite 1200, Metairie, LA
*1033 70002) and was delivered on October 26, 2016. Respondent did not respond to the complaint. The ODC then sent a second letter via regular mail to respondent's primary and secondary (1502 South Vintage Lane, Lake Charles, LA 70605) registration addresses. This letter also requested that respondent verify that his information registered with the LSBA was current. The mailing to the secondary address was returned as undeliverable. The mailing to the primary address was not returned.
Also in connection with the Purvis matter, respondent was served on January 3, 2018 with a subpoena to testify on February 7, 2018 and to bring a copy of his file related to his representation of Mr. Purvis. Respondent did not appear on February 7th. The ODC contacted respondent by phone and he stated that he was experiencing some health issues that day and had forgotten to contact the ODC to advise that he would not be appearing for the statement. In that conversation, respondent further advised that he had recently relocated to Lake Charles.
On February 8, 2018, the ODC sent a letter to respondent enclosing a copy of Mr. Barker's complaint and advising respondent that he was required to provide a response within fifteen days of receipt. The letter was sent by certified mail to respondent's primary registration address. The mailing was later returned as undeliverable.
On March 2, 2018, after having no success with the request to have respondent return Mr. Pollard's file to him as previously discussed, the ODC sent a letter enclosing a copy of Mr. Pollard's complaint and advising respondent that he was required to provide a response within fifteen days of receipt. The letter was sent by certified and regular mail to respondent's primary registration address, and by regular mail to a third unregistered address (2509 Oak Cliff Street, Lake Charles, LA 70607) which at some point had been provided by the Post Office as a forwarding address for respondent's secondary registration address. Both mailings to the primary registration address were later returned as undeliverable. The regular mailing to the third address was not returned.
Also on March 2, 2018, the ODC sent a letter to respondent which referenced all three complaint numbers and requested that he contact the ODC within five days to reschedule his sworn statement. The letter also requested that respondent update his LSBA registration information. This letter was sent by regular mail to respondent's primary registration address and to the third unregistered address received from the Post Office. The letter sent to the primary registration address was returned as undeliverable. The letter to the unregistered address was not returned.
In sum, respondent has never provided a response to the Purvis, Barker, or Pollard complaints. Further, despite the evidence showing that respondent's primary and secondary registration addresses are not valid and despite the ODC's requests that he update his registration information, respondent has failed to do so. Based on these findings, the board concluded that the ODC presented sufficient evidence demonstrating respondent violated Rules 1.1(c) (failure to comply with the Supreme Court's rules regarding annual registration, including timely notification of changes of address), 8.1(b) (knowing failure to respond to a lawful demand for information from a disciplinary authority), and 8.1(c) (failure to cooperate with the ODC in its investigation) of the Rules of Professional Conduct.
4. Conclusion
The board concluded that the ODC has presented sufficient evidence to demonstrate *1034 that respondent has violated certain conditions of his probation and has committed further violations of the Rules of Professional Conduct, both of which are grounds for the revocation of his probation. Accordingly, the board recommended that respondent's probation be revoked and that the deferred one year and one day suspension imposed in Harris I be made executory. The board also recommended that respondent be ordered to produce immediately to Mr. Vangure (via his attorney, Mr. Barker) and to Mr. Pollard their respective files. Finally, the board recommended that respondent be assessed with all costs and expenses of these proceedings.
DISCUSSION
A review of the record reveals that respondent has not complied with the requirement of his October 20, 2016 probation agreement that he cooperate with his probation monitor. In addition, respondent has had three disciplinary complaints filed against him since the court's decision in Harris I . As set forth in the board's very detailed report, two of the complaints involve respondent's refusal to return his client's files, which has caused great harm to his former clients. Respondent also failed to cooperate with the ODC in its investigation of the complaints, including failing to appear for a sworn statement. Notably, the ODC has had difficulty communicating with respondent in these matters due to his failure to keep his address current with the LSBA, as required by Supreme Court Rule XIX. To protect the public, we find it is necessary to revoke respondent's probation and impose the previously-deferred suspension.
Accordingly, we will accept the disciplinary board's recommendation and grant the motion to revoke respondent's probation, making the previously-deferred one year and one day suspension imposed in Harris I immediately executory. We will also order respondent to immediately return Mr. Vangure's and Mr. Pollard's files.
DECREE
For the reasons assigned, respondent's probation is revoked and the previously-deferred one year and one day suspension imposed in In re: Harris , 13-2368 (La. 12/6/13), 129 So.3d 526 (" Harris I "), is hereby made immediately executory. It is further ordered that respondent return the files of Wilford Vangure and Bernell Pollard. All costs and expenses in the matter are assessed against respondent, Arthur L. Harris, Sr., Louisiana Bar Roll number 6608, in accordance with Supreme Court Rule XIX, § 10.1, with legal interest to commence thirty days from the date of finality of this court's judgment until paid.

There is no explanation in the record for the delay in executing the probation agreement.

Mr. Wheelahan died on February 3, 2018.

The special process server came to the hearing on the ODC's rule to revoke probation in an attempt to make service on respondent when he arrived for the hearing; however, respondent could not be served because he did not appear at the hearing.